CULPEPPER, Judge.
This is a suit for damages for personal injuries. The plaintiffs, Alphonse J. Cor-mier, Joseph S. Hill and Mazique Johnson, were passengers in a taxicab at the time it was involved in a collision with a switch engine on a city street in Lake Charles, Louisiana. Named as defendants were Southern General Insurance Company, the liability insurer of the taxicab, and Missouri Pacific Railroad Company, the owner and operator of the switch engine. After trial on the merits, the jury returned verdicts against both defendants in favor of Cormier for $12,500, in favor of Hill for $1,200, and in favor of Johnson for $250. On motions for new trial by both defendants, the district judge ordered Cormier to make a remittitur in the sum of $6,250 and, on his failure to do so, ordered a new trial in Cormier’s case only, restricted solely to the issue of the amount of damages. The motion for new trial as to Hill and Johnson was denied and judgment as to these two plaintiffs was signed. From this judgment in favor of plaintiffs Hill and Johnson, only the defendant, Missouri Pacific Railroad Company, has appealed.
The accident occurred on December 27, 1961 at about 4:00 a. m. The street was wet but it was not raining at the time. A detailed description of the situs of the collision is necessary in order to understand the railroad’s principal defense, which is that this was not a crossing accident but instead was a collision which occurred before the switch engine reached the crossing.
At this location, the railroad tracks run down the center of Common Street for a distance of several blocks. The tracks are imbedded in the pavement of the street, which is a two-way thoroughfare running generally north and south. Sixth Street enters Common Street from the west, forming a T-intersection, and then leaves Common Street to the east at another T-intersection lying approximately 103 feet north of the western intersection. At a point approximately 200 feet north of the east intersection of Sixth Street, Common Street turns to the northeast at an angle of approximately 45 degrees. However, the railroad tracks which run down the center of Common Street to this point, do not turn to the right but, instead, run straight and, as they leave the north side of Common Street, curve to the left, forming a “Y” with the street. A railroad crossing sign is located at the point where the tracks leave Common Street. There are no other warning signs or devices at the crossing.
The taxicab in which the plaintiffs were passengers was proceeding southward on Common Street toward the crossing in question. The driver of the taxi was intoxicated and was traveling at a speed of about 40 miles per hour.
At about the same time, the switch engine was proceeding singly northward on its tracks in the center of Common Street, at 10 or 12 miles per hour. We think the evidence shows conclusively that the headlight of the engine was burning and the automatic bell signal was sounding continuously. When the engine reached a point approximately at the intersection of Sixth Street, the fireman, Mr. Mitter-night, from his position on the right, or east side, of the engine, observed the headlights of the taxicab rapidly approaching around the curve on Common Street to the north. Mitternight signaled the engineer, who could not see these lights, to slow down and the engineer commenced slowing the engine. The taxi came around the curve and, instead of crossing over the tracks into its proper lane of travel, came down the tracks toward the engine without slackening speed. The evidence shows that although the taxi passengers saw the engine and, at the last moment, attempted to warn the driver, he apparently never saw the engine. *306 When the fireman realized that a collision was imminent, he signaled the engineer to apply the emergency brakes which was done immediately. The taxi continued down the tracks and hit the engine almost head-on. The engine stopped about 15 feet north of the point of impact and the taxi was pushed off to the northwest. The exact location of the point of impact is the most seriously contested issue in this case.
An ordinance of the city of Lake Charles provides in pertinent part that “whenever any locomotive or car approaches a crossing on any line or track, it shall be brought to a standstill until a flagman or other employee advances to the center of the crossing and signals to the engineer, motor man or other person in advance of the locomotive or car whether it is a safe distance to advance across the crossing. In lieu of this the company may maintain at crossings a permanent flagman * * * automatic electric warnings * * * electric stop gates * * * ” At this particular location there was admittedly no permanent flagman or warning device other than the “cross buck” railroad sign. It is likewise admitted that, on the occasion in question, the locomotive had not been brought to a standstill, nor had a flagman or other employee been sent in advance to the center of the crossing. Actually, the railroad employees on the locomotive admitted that at this particular crossing they did not customarily dispatch a flagman in compliance with the ordinance and did not plan to do so on this occasion. However, the railroad contends that the above stated city ordinance has no application in this case because the accident did not occur at the crossing. The railroad contends that therefore the absence of a flagman had no causal connection with the accident.
The crucial question here is whether the accident occurred at the crossing or at a substantial distance before the engine arrived at the crossing.
Since this was a jury trial, we have no way of knowing whether the jury found as a fact that this accident occurred either in the crossing or so near thereto that the railroad was in violation of the above stated ordinance requiring a flagman but, if the jury did make such a factual determination, it is our opinion they were manifestly erroneous in this respect. A clear preponderance of the evidence shows that the collision occurred at a point at least 75 feet from the point at which the eastern boundary line of Common Street turns to the northeast.
A brief review of the testimony as to the point at which the taxi and the engine collided shows the following: Officer Mel-ancon, who investigated the accident immediately after its occurrence, testified first that the point of impact was about one-third or one-fourth of the way from the curve in Common Street to Sixth Street, which would be anywhere from 50 feet to 100 feet from the curve, depending on whether the officer was talking about the east intersection of Sixth Street or the west intersection. After rechecking the scene of the accident during the trial, he testified that the taxi came to rest 20 feet north of a gutter, (located 86 feet north of the east intersection of Sixth Street) which would mean that the taxi came to rest 94 feet from the curve. Later he stated that the taxi was about 3 car lengths, (about 60 feet) from the curve. Taking into account the fact that the engine pushed the taxi back 15 feet after the collision, this would put the point of impact at least 75 feet from the curve.
Officer Broussard, who accompanied officer Melancon during the original investigation, simply agreed with officer Mel-ancon’s first version of the accident, that is, the one which placed the point of impact about one-fourth of the way from the curve to Sixth Street, i. e., 50 to 100 feet from the crossing.
The plaintiff, Joseph S. Hill, Jr., testified that as the taxi came around the curve in Common Street, the engine was 50 to 75 yards away and that the taxi went down the center of the tracks and hit the engine. *307 This would put the point of impact well over 100 feet from the curve.
Mr. McClendon, the claim agent for the railroad, went to the scene the next morning and found glass and other debris indicating the point of impact about opposite the gutter, which would be over 100 feet from the curve. Mr. Dowies, the brakeman on the train, did not measure the distances but estimated that the engine stopped about 100 feet from the crossing, which would put the point of impact at about 115 feet from the crossing. Mr. Mitternight, the fireman on the train, actually paced off the distances immediately after the collision and testified that the engine stopped 20 paces (60 feet) from the crossing. Allowing for the 15 feet that the engine moved after the collision, this would put the point of impact 75 feet from the curve.
The only witness who testified that the collision occurred in the crossing was the plaintiff, Mazique Johnson, who testified that the taxi was going too fast and skidded around the corner. Then he saw the train and yelled to the taxi driver, but the driver drove right into the engine. Johnson later stated that the collision occurred “in the crossing”, but this does not seem consistent with his previous description of the accident.
Furthermore, a physical fact which is relevant is that the taxi hit the engine head-on, which would indicate that the taxi had passed the curve and was proceeding down the tracks toward the engine.
The above evidence shows by an overwhelming preponderance that the collision did not occur in the crossing but on the contrary occurred at least 75 feet from the crossing, i. e., 75 feet south of the point at which the east boundary line of Common Street turns to the northeast.
Under these circumstances we think that although the train crew admitted they were going to violate the ordinance within the next few seconds, by failing to place a flagman at the crossing, the train crew had not yet violated the ordinance. Even at the point of impact, the engine had not yet reached the point where it was obligated under the ordinance to stop and send a flagman ahead to the crossing. In other words, when the taxi reached the crossing the train was more than 75 feet from the crossing and had not yet reached the point at which the train crew, under the city ordinance, was required to stop and send a flagman forward. It is therefore our conclusion that there was no violation of the ordinance, which had any causal connection with the accident.
The plaintiffs make an alternative argument that even if the site of the accident was some distance south of the curve in Common Street, as contended by the railroad, the city ordinance is still applicable because the word “crossing”, as used in the ordinance, would include the entire distance which the tracks run down the center of Common Street, i. e., a distance of several blocks. We think a mere reading of the ordinance shows that it was not intended that the word “crossing” include this type of situation where tracks run down the center of a street for a considerable distance. The ordinance requires that when a locomotive approaches a crossing “it shall be brought to a standstill until a flagman or other employee advances to the center of the crossing and signals to the engineer * * * ” The ordinance also provides for electric signals or stop gates in lieu of a flagman. It is obviously not intended that this entire distance of several blocks in which the tracks run down the middle of Common Street be considered as a crossing.
The plaintiff also argues that regardless of the ordinance, this was such a dangerous situation that a flagman should have been sent ahead to warn vehicles coming south on Common Street, approaching the crossing, that there was an engine on the tracks beyond the curve. We cannot agree with this contention. The engine had as much right to be on the street as the *308 taxi. The engine was going slow and had its bell ringing and its light burning, which any ordinary, reasonable driver should have been able to perceive. Actually, both of the plaintiffs, Johnson and Hill, saw the engine as they entered the curve. Any reasonable driver should have seen it in time to avoid a collision. We do not think the train crew acted unreasonably under the circumstances.
For the reasons assigned, the judgment appealed is reversed and set aside, insofar as it casts the defendant, Missouri Pacific Railroad Company. Accordingly, the demands of the plaintiffs, Joseph S. Hill, Jr. and Mazique Johnson, against defendant, Missouri Pacific Railroad Company, are rejected. The defendant, Southern General Insurance Company, liability insurer of the taxicab, has not appealed and the judgment remains in full force and effect as to this defendant. All costs of this appeal are assessed against the plaintiffs appellants.
Reversed in part and rendered.